IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

FERNANDO LEMUS CRISPIN,    )
              )
   Petitioner,     )
              )
   v.         )  1:26-cv-191 (LMB/WEF)
              )
PAMELA BONDI, et al.,    )
              )
   Respondents.    )

## MEMORANDUM OPINION

Before the Court is petitioner Fernando Lemus Crispin's ("Lemus") Emergency Motion

for Order to Show Cause ("Motion"), in which he seeks enforcement of the Court's January 28,

2026 Order requiring the federal respondents to provide him with an individualized bond hearing

pursuant to 8 U.S.C. § 1226(a). Although Lemus received a bond hearing on February 10, 2026

in response to the Court's January 28, 2026 Order, he contends that the Immigration Judge's

decision to deny his request for release on bond violated due process. The federal respondents

have filed an opposition, and Lemus has filed a reply. For the reasons stated below, Lemus's

Motion will be granted, and the federal respondents will be ordered to provide him with a new,

constitutionally compliant § 1226(a) bond hearing before a new Immigration Judge.

I.

Section 1226(a) governs the detention of certain noncitizens "already present in the

United States" pending the outcome of removal proceedings. Jennings v. Rodriguez, 583 U.S.

281, 303 (2018). Although § 1226(a) permits the Attorney General to detain noncitizens during

removal proceedings, "the [Immigration and Nationality] Act and the regulations adopted to

implement its authority afford aliens three opportunities to seek release from detention" either on

a monetary bond or on conditional parole.[1]  Miranda v. Garland, 34 F.4th 338, 346 (4th Cir. 2022).  The first opportunity is with an immigration officer, who is authorized to release a noncitizen on bond or conditional parole if he "demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding."  8 C.F.R. § 236.1(c)(8).  "If an immigration officer denies bond, sets bond at an amount the alien believes is too high or sets alternative conditions to bond the alien contends are unreasonable, an alien may appeal the officer's bond determination to an immigration judge, giving the alien a second opportunity at release."  Miranda, 34 F.4th at 346 (citing 8 C.F.R. §§ 236.1(d)(1), 1003.19(a), 1236.1(d)(1)).  The "third opportunity comes if an alien is not satisfied with the immigration judge's decision," at which time the noncitizen "may appeal to the Board of Immigration Appeals ["BIA"] for another review."  Id. at 346–47 (citing 8 C.F.R. §§ 236.1(d)(3), 1003.19(f), 1236.1(d)(3)).  "At each step in this process, the government requires the [noncitizen] to prove that he or she is not a danger to the community or a flight risk."  Id. at 347 (citing 8 C.F.R. §§ 236.1(c)(8), 1236.1(c)(8)).

In conducting a § 1226(a) bond hearing, an Immigration Judge "may look to a number of factors," including:

> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee

---

[1] As the Fourth Circuit has stated, the Court occasionally uses the term "alien" because Congress has used the term in the text of the applicable statutes and regulations.  The Court's "use of the term 'alien' is not intended to express any opinion, pejorative or otherwise, about the [petitioner] in this action or others challenging their detention under our immigration laws."  Miranda v. Garland, 34 F.4th 338, 345 n.1 (4th Cir. 2022).

prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

In re Guerra, 24 I. & N. Dec. 37, 40 (BIA 2006). "These factors provide a non-exhaustive, but flexible menu of considerations relevant to detention decisions." Miranda, 34 F.4th at 362. And of course, the procedures used by federal immigration officials to deny a noncitizen's request for release on bond always must comply with fundamental principles of due process. See id. at 359 (applying the Mathews v. Eldridge "balancing test to evaluate due process challenges to the procedures used by the government under § 1226(a)").

## II.

The following facts are derived from the pleadings, the exhibits, and the audio recording of the February 10, 2026 bond hearing, which the federal respondents have provided to the Court. Lemus is a native and citizen of Guatemala. [Dkt. No. 1] at ¶ 1. He has resided in the United States since 1992, having entered the country as a minor. Id. at ¶ 18. On January 20, 2026, he was arrested by ICE while on his way to work. Id. ¶¶ 22. On January 21, 2026, Lemus filed a Petition for Writ of Habeas Corpus ("Petition"), arguing that he was entitled to a § 1226(a) bond hearing. [Dkt. No. 1]. In response, the federal respondents filed a pleading indicating that Lemus's Petition did "not differ in any material fashion" from the factual and legal issues presented in Ceba Cinta v. Noem, et al., 1:25-cv-1818-LMB-WEF (E.D. Va.), in which the Court determined that an individual who had been present in the United States for several years was not detained under 8 U.S.C. § 1225(b)(2) but rather detained under § 1226(a), thus entitling him to a bond hearing. [Dkt. No. 7]. On January 28, 2026, the Court entered an Order finding that Lemus's detention was governed by § 1226(a) and directing the federal respondents to provide him with a standard bond hearing. [Dkt. No. 9]. The Court also ordered Lemus's prompt release from custody pending that bond hearing. Id.

3

On February 10, 2026, Lemus appeared with counsel in person for his scheduled bond hearing before Immigration Judge David Gardey in the Annandale Immigration Court, despite the fact that the hearing was scheduled as a tele-video hearing. [Dkt. No. 11] at ¶ 2. Lemus argued that he should be released on bond because he presents neither a flight risk nor a danger to the community, citing his steady employment history; fixed address via property ownership in Maryland; immediate family ties to his United States citizen family, which includes his elderly mother, two adult children, sister, and legal permanent resident wife, who were all present at the bond hearing; his pending applications for immigration status;[2] and attendance at immigration hearings. Lemus acknowledged that he had previously used his older brother's identity when he first arrived in the United States at age fifteen, but had ceased using his brother's identity over ten years ago and legally corrected his name with the Circuit Court for Prince George's County, Maryland to ensure that his identity is legally established. See id. at ¶ 5. Lemus provided the Immigration Judge with his 2023 and 2024 federal and state tax returns; proof of U.S. citizenship for his adult children, mother, and sister, and proof of legal status for his wife; letters of support from his family, friends, and community members, at least some of whom are U.S. citizens; proof of his pending applications for immigration status; and additional records corroborating his fixed address and property ownership. The Department of Homeland Security ("DHS") attorney argued that Lemus should be detained pending the removal proceedings because Lemus used a false identity when he first entered the United States, and has had no work authorization since 2023. The DHS attorney highlighted that Lemus had a DUI conviction in 2000, which he

---

[2] This includes an I-130 Petition for Alien Relative completed by Lemus's son, which was approved by U.S. Citizenship and Immigration Services ("USCIS") on August 20, 2021, see [Dkt. No. 21-1] at 122, and an I-601A Application for Provisional Unlawful Presence Waiver, which was submitted in February 2024 and remains pending with USCIS, see id. at 124.

characterized as a "significant conviction," and asserted that petitioner's pending applications for immigration status were all speculative at this time. Lemus's counsel responded, and the Immigration Judge issued an oral ruling:

> Unfortunately, I'm going to have to deny your request for bond. You have established that he is not a danger to the community; the fact that he had a DUI 26 years ago is not significant given that he's not had any other contact with the law since then. However, I don't find that you've established that he is not a risk of flight. Obviously he's appeared here and he's appeared during his 2012 case, but the issue is whether he will remove himself as directed if that is what the Court ultimately decides; whether he will comply with Court orders going forward. Given the many circumstances in this case, I can't feel confident that he will abide by the final order of the Court. He, for many years, used a false identity: he presented a false identity to the immigration authorities, made false statements under oath to the immigration authorities. He has apparently since—in 2023—he has worked without authorization and has used a company fiction to continue to work without proper authorization. The Court is concerned by the many claims that he is both providing significant financial support to both his mother and his wife, and other individuals and supporting himself, but only claiming very limited income and appearing to not be truthful and legal with the IRS, which is a continuation of his prior activities of violating immigration laws, tax laws, and employment laws of the United States in order to live illegally in the United States and to avoid being removed, and the Court cannot find that he will obey the Court's orders going forward. I am going to deny the request for bond.[3]

Although the Immigration Judge required Lemus to self-surrender to DHS by February 13, 2026 at 5:00 PM, this Court entered an Order on February 12, 2026 enjoining the federal respondents from re-detaining Lemus "pending adjudication of his Request for an Order to Show Cause[.]" [Dkt. No. 14] at 1. Although it is unclear from the record whether Lemus has appealed the Immigration Judge's detention decision to the BIA, on February 12, 2026, Lemus filed the pending Motion, which seeks enforcement of this Court's January 28, 2026 Order and contends that the bond hearing he received did not comply with procedural due process requirements. [Dkt. No. 11].

---

[3] This quote is taken from the audio recording of the February 10, 2026 bond hearing. It is an unofficial transcript prepared by the Court.

III.

Before reaching the merits of Lemus's Motion, the Court must determine if it has jurisdiction to determine whether the federal respondents provided Lemus with a constitutionally compliant § 1226(a) bond hearing.  The federal respondents contend that 8 U.S.C. §§ 1226(e) and 1252(a)(2)(B)(ii) strip the Court of jurisdiction to review an Immigration Judge's decision to deny bond.  The federal respondents also assert that Lemus failed to exhaust his administrative remedies because he did not appeal the adverse bond decision to the BIA before seeking relief from this Court.  For the reasons explained below, these arguments are rejected.

A.  Section 1226(e)

The federal respondents first argue that 8 U.S.C. § 1226(e) precludes the Court from exercising jurisdiction over Lemus's Motion.  Section 1226(e) provides that "[t]he Attorney General's discretionary judgment regarding the application of this section shall not be subject to review," and that "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole."  According to the federal respondents, because Lemus's Motion challenges the Immigration Judge's discretionary bond decision, § 1226(e) strips the Court of jurisdiction.  [Dkt. No. 20] at 3-7.

It is undisputed that "§ 1226(e) precludes an alien from challenging a discretionary judgment by the Attorney General or a decision that the Attorney General has made regarding his detention or release."  Jennings, 583 U.S. at 295 (cleaned up).  In this sense, Judge Ellis's opinion in Hatami v. Chertoff, 467 F. Supp. 2d 637 (E.D. Va. 2006), which is cited heavily by the federal respondents, is instructive.  Hatami involved a noncitizen from Afghanistan who had been convicted in Virginia of domestic assault and battery.  Id. at 638–39.  After the BIA denied Hatami's request for cancellation of removal, Hatami submitted three consecutive bond

6

applications which were denied because "DHS ha[d] made a prima facie showing of dangerousness" based on "a facially legitimate concern with [Hatami's] behavior." Id. at 639. Hatami challenged the Immigration Judge's bond decision in federal court, claiming that the Immigration Judge "failed to provide a 'meaningful' bond hearing . . . because he relied on the government's 'bare bones allegations' of dangerousness." Id. The district court dismissed his habeas action, finding that § 1226(e) precluded judicial review because Hatami "challenge[d] only the decision to deny bond under the statute." Id. at 641–42 (emphasis added). By using the qualifier "only," it is clear that Judge Ellis did not close off other grounds upon which a noncitizen could seek relief from an Immigration Judge's denial of bond.

Indeed, as recognized by both the Supreme Court and the Fourth Circuit, § 1226(e) does not preclude the Court's exercise of jurisdiction where a noncitizen raises a constitutional challenge to the bond hearing he received. In Jennings, the Supreme Court made clear that § 1226(e) "does not preclude challenges to the statutory framework that permits the alien's detention without bail." 583 U.S. at 295 (cleaned up). In Jennings, several noncitizens mounted Fifth Amendment challenges to 8 U.S.C. §§ 1225(b), 1226(a), and 1226(c), contending that they were entitled to periodic bond hearings during the course of their detention. Id. at 286, 312. The Court held that because the noncitizens "contest[ed] the constitutionality of the entire statutory scheme," and because "the extent of the Government's detention authority is not a matter of 'discretionary judgment,'" it was able to "consider the merits of their claims." Id. at 296.

Following Jennings, the Fourth Circuit held in Miranda that § 1226(e) did not prohibit the exercise of jurisdiction where noncitizens challenged "the Attorney General's decision to adopt procedures placing the burden of proof on aliens detained under § 1226(a)." 34 F.4th at 352. Specifically, the court stated that a "constitutional challenge" to the Attorney General's "categorical, across-the-board" procedures "is beyond the scope of § 1226(e)." Id. Taking

7

Jennings and Miranda together, courts in this district have concluded that § 1226(e) does not bar judicial review where a noncitizen asserts that the factors an Immigration Judge employed in denying his request for release on bond failed to comport with due process.[4] See Mendez Trigueros v. Guadian, et al., 1:26-cv-205-AJT-WBP, Dkt. No. 13, at 3 (E.D. Va. Feb. 18, 2026).

Here, Lemus does not seek routine review of an Immigration Judge's discretionary bond determination. Rather, his challenge is constitutional in nature because he seeks enforcement of this Court's habeas order, which required a constitutionally adequate and legally compliant bond hearing. [Dkt. No. 21] at 1-2. Specifically, he contends that the facts the Immigration Judge relied upon to deny him bond—including his unlawful status, his lack of employment authorization, and his speculative tax issues—were so lacking in probative value that the consideration of those facts deprived him of a fair and individualized bond hearing.[5] Id. 9-12. Because "this is precisely the type of claim that belongs in federal court," Picado v. Hyde, 2026 WL 352691, at *4 (D.R.I. Feb. 9, 2026) (cleaned up), § 1226(e) does not strip the Court of jurisdiction to consider Lemus's Motion.

B. Section 1252(a)(2)(B)(ii)

---

[4] Courts in other jurisdictions have reached similar conclusions. See Singh v. Holder, 638 F.3d 1196, 1202 (9th Cir. 2011) (holding that § 1226(e) "does not limit habeas jurisdiction over constitutional claims or questions of law"); Trejo v. Bullock, 2026 WL 598391, at *2 (E.D. Tenn. Mar. 3, 2026) ("[T]his Court's jurisdiction to review Petitioner's bond hearing is limited to whether it satisfied due process or otherwise suffered some defect that rendered it noncompliant with this Court's Order."); Picado v. Hyde, 2026 WL 352691, at *4 (D.R.I. Feb. 9, 2026) (finding that § 1226(e) does not strip the court of jurisdiction where a noncitizen "argues that the IJ failed to comport with due process requirements when she denied him release on bond"); Garcia v. Hyde, 2025 WL 3466312, at *7 (D.R.I. Dec. 3, 2025) ("[C]ourts can review the IJ's decision to ensure that it comported with procedural due process requirements.").

[5] Although the Court recognizes that Lemus has also argued that the Immigration Judge was not an impartial adjudicator because "[t]he immigration court system has been transformed into a body that is structurally incapable of upholding Petitioner's statutory and constitutional rights," [Dkt. No. 21] at 16, the Court declines to address that issue at this time.

8

The federal respondents' second jurisdictional argument is based on 8 U.S.C. § 1252(a)(2)(B)(ii), which prohibits federal courts from reviewing any "decision or action" of "the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in [her] discretion." According to the federal respondents, because the decision whether to release a noncitizen on bond or conditional parole pending the outcome of removal proceedings is committed to agency discretion, § 1252(a)(2)(B)(ii) forecloses jurisdiction. [Dkt. No. 20] at 7-10. This argument is unpersuasive for one simple reason: Lemus's claim is limited to whether the Immigration Judge's decision comports with due process, and federal immigration officials do not have discretion as to whether to comply with the Fifth Amendment in denying a noncitizen's request for release on bond. Accordingly, § 1252(a)(2)(B)(ii) does not bar the exercise of jurisdiction. Accord Mendez Trigueros v. Guadian, et al., 1:26-cv-205-AJT-WBP, Dkt. No. 13, at 4 (E.D. Va. Feb. 18, 2026); see also Miranda, 34 F.4th at 353 n.6 (holding that § 1252(a)(2)(B)(ii) does not bar jurisdiction where the noncitizens "challenge[d] the extent of the government's authority under § 1226(a) rather than a discretionary decision").

C. Exhaustion

Finally, the federal respondents argue that Lemus failed to exhaust his administrative remedies by not appealing the Immigration Judge's adverse bond decision to the BIA. [Dkt. No. 20] at 2-3. That argument also fails. In Miranda, the Fourth Circuit considered whether a noncitizen asserting a Fifth Amendment challenge to the procedures used during a § 1226(a) bond hearing must appeal to the BIA before seeking relief in federal court. 34 F.4th at 351. The Fourth Circuit concluded that because "no statute applicable to [the claims at issue] provides that administrative exhaustion is jurisdictional," the "district court had discretion to decide if administrative exhaustion is required." Id.; see McCarthy v. Madigan, 503 U.S. 140, 144 (1992)

9

("[W]here Congress has not clearly required exhaustion, sound judicial discretion governs."). Here, the federal respondents have not advanced any compelling argument for the proposition that Lemus should be required to appeal to the BIA before seeking relief in this Court, and the Court will not require Lemus to "sit in an ICE detention facility" for months on end while he awaits a BIA decision. Picado, 2026 WL 352691, at *6. Accordingly, "the [C]ourt will exercise its discretion to excuse administrative exhaustion" in this habeas action. Dubon Miranda v. Barr, 463 F. Supp. 3d 632, 643 (D. Md. 2020), aff'd sub nom. Miranda, 34 F.4th 338; accord Diahn v. Lowe, 2026 WL 84576, at *5 (M.D. Pa. Jan. 12, 2026).

IV.

Turning to the merits of Lemus's Motion, the Court finds that most of the facts the Immigration Judge relied upon in denying Lemus's request for release on bond violated due process. In denying Lemus's request, the Immigration Judge found that, although Lemus established that he is not a danger to the community, he failed to establish that "he is not a risk of flight." In support of that determination, the Immigration Judge relied upon three facts that do not pass constitutional muster, and at least one of which also violates long-standing BIA jurisprudence.

First, the Immigration Judge pointed to Lemus's unlawful status. He stated that Lemus had "violat[ed] immigration laws . . . in order to live illegally in the United States and to avoid being removed" as a reason why he "cannot find that [petitioner] will obey the Court's orders going forward." But a noncitizen's unlawful status cannot provide a legitimate consideration upon which an Immigration Judge may deny a request for release on bond under § 1226(a) given that every individual who appears before an Immigration Judge for custody redetermination lacks lawful status. To consider this fact violates both § 1226(a)'s requirement of an individualized hearing and fundamental due process principles. As another jurist in this district

10

aptly stated, "an individual's bond hearing fails to comport with due process where an Immigration Judge relies on considerations that would lead to an automatic denial of bond in all cases." Argueta-Portillo v. Bondi, et al., 1:26-cv-122-MSN-LRV, Dkt. No. 16 (E.D. Va. Mar. 2, 2026). Moreover, Lemus's unlawful status is undermined by the fact that he has an approved I-130 Petition, and a pending I-601A application with USCIS. See [Dkt. No. 21-1] at 122, 124.

BIA precedents confirm this conclusion. In Matter of Patel, the BIA considered whether an Immigration Judge erred in releasing a noncitizen on a bond of $500 rather than releasing him on his own recognizance. 15 I. & N. Dec. 666, 666–67 (BIA 1976). In setting a bond of $500, the Immigration Judge relied upon the noncitizen having "overstayed his student visa" and the fact that "the visa petition of which he is the beneficiary was denied because he lacked a labor certification." Id. at 667. But the BIA found that "[t]hese factors bear little if any relevance to the issue of whether or not the [noncitizen] is likely to appear for his deportation proceeding." Id. According to the BIA, "[s]uch a broad interpretation of what constitutes an 'adverse factor' in this context could result in requiring a bond of almost every alien who is held in deportation proceedings." Id. Therefore, the BIA released the noncitizen on his own recognizance. Id. The BIA has continued to cite Matter of Patel for the proposition that "factors unique to each alien must be evaluated in determining suitability for release on custody." In re Helia de la Cruz-Palencia, 2011 WL 2261251, at *1 (BIA May 13, 2011) (unpublished).

Second, the Immigration Judge emphasized that Lemus has been working in the United States without authorization. This is problematic for two reasons. To begin, similar to the previous discussion concerning the consideration of a noncitizen's unlawful status, Lemus's "unauthorized employment is inextricably related to the unlawful status that has caused his detention and request for a bond hearing in the first place." Mendez Trigueros v. Guadian, et al., 1:26-cv-205-AJT-WBP, Dkt. No. 13, at 6 (E.D. Va. Feb. 18, 2026). If an Immigration Judge

11

could consider a noncitizen's unauthorized employment—which typically accompanies a noncitizen's unlawful status—"discretionary detention under § 1226(a) . . . would become a de facto mandatory § 1225 detention." Id. Moreover, no reasonable inference of flight risk can be drawn from a steady history of employment, authorized or not. Id. Rather, steady employment often reflects economic and residential stability and ties to the community in which the noncitizen is employed.[6] In short, the link between Lemus's unauthorized employment and any risk of flight is so tenuous that the Immigration Judge's reliance on that fact deprived Lemus of constitutionally sufficient process.

Third, the Immigration Judge pointed to potential inconsistencies in Lemus's tax returns. According to the Immigration Judge, Lemus's business generates $400,000 of revenue a year, but Lemus's tax returns indicate that he reported a net annual income of around $10,000. Despite counsel's explanation that Lemus's net income amount reflected deductions based on expenses, the Immigration Judge concluded that Lemus is "not truthful and legal with the [Internal Revenue Service]" and violated tax laws. As an initial matter, it is unclear from the record before this Court why the Immigration Judge chose to discredit Lemus's explanation regarding his filed tax returns. See [Dkt. No. 21] at 10. Moreover, an underreporting of income, standing alone, does not provide the evidentiary support constitutionally required to deny a noncitizen's request for release on bond, particularly given that the Immigration Judge did not consider any condition or set of conditions that will reasonably ensure Lemus's appearance at future proceedings.

---

[6] In the criminal context, a steady employment history typically entitles a defendant to release pending trial. See, e.g., United States v. Adams, 794 F. Supp. 2d 989, 993 (S.D. Iowa 2011) (finding that "the Government has not shown by a preponderance of the evidence that Defendant will not appear as required if released pending trial" because "[f]or the two years leading up to her arrest she had maintained steady employment . . . and apparently will be able to return to this job if released pending trial").

Accord Mendez Trigueros v. Guadian, et al., 1:26-cv-205-AJT-WBP, Dkt. No. 13, at 6 (E.D. Va. Feb. 18, 20260).  In sum, the facts relied upon by the Immigration Judge do not provide a constitutionally sufficient basis upon which to have denied Lemus's request for release on bond based on the conclusion that he poses a risk of flight.

V.

For all the reasons stated above, Lemus's Motion, [Dkt. No. 11], will be granted by an Order to be issued with this Memorandum Opinion, which will require the federal respondents to provide Lemus with a new, constitutionally compliant bond hearing pursuant to § 1226(a) before a different Immigration Judge.

The Clerk is directed to forward a copy of this Memorandum Opinion to counsel of record.

Entered this 18 day of March, 2026.

Alexandria, Virginia

/s/

Leonic M. Brinkema
United States District Judge

13